988 F.2d 125
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernie R. SANDERS, Defendant-Appellant.
 No. 91-50705.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1993.
Decided Feb. 18, 1993.
As Amended on Denial of Rehearing
May 17, 1993.
 
 Appeal from the United States District Court for the Southern District of California; No. CR-89-0817-CCN-01, Clarence C. Newcomer, District Judge, Presiding.
 S.D.Cal.
 AFFIRMED.
 Before WALLACE, Chief Judge, and SNEED and CYNTHIA HOLCOMB HALL, Circuit Judges.
 
 MEMORANDUM
 
 1
 Sanders appeals from his conviction following a jury trial for conspiracy to possess marijuana, possession of marijuana, possession of 78 marijuana plants, and possession of hashish, in violation of 21 U.S.C. §§ 846 and 841(a)(1). He also appeals from his sentence under the Sentencing Guidelines (Guidelines). The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 2
 * Sanders first contends that the district court erred in refusing to suppress evidence recovered from his residence pursuant to a search warrant. He argues that the affidavit supporting the search warrant did not establish probable cause because it did not (1) establish a nexus between his alleged criminal activity and his residence; (2) sufficiently detail the basis of knowledge or credibility of the informants; or (3) rest on fresh information.
 
 
 3
 We review the magistrate's determination of probable cause under the "substantial basis" standard. United States v. Dicesare, 765 F.2d 890, 896 (9th Cir.), amended, 777 F.2d 543 (9th Cir.1985) (Dicesare ). The existence of probable cause depends of the totality of the circumstances. United States v. Kerr, 876 F.2d 1440, 1444 (9th Cir.1989).
 
 
 4
 First, a sufficient nexus existed between Sanders's alleged criminal activity and his residence. The affidavit clearly indicated that Sanders trafficked in large amounts of cocaine and marijuana. It also contained information linking Sanders's narcotics dealings with his residence. CI-3, for example, told federal agents that Sanders ran a limousine service out of his house that he used as a "front" for his drug operation. They also stated that Sanders used a two-tone blue Ford pickup truck in his narcotics businesses. Agents observed this truck, and a limousine, parked in front of Sanders's residence during surveillance in July and August 1989. In addition to this direct evidence, a magistrate may draw reasonable inferences about where evidence is likely to be kept, taking into account the nature of the evidence and the type of offense. United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986) (Angulo-Lopez ). "In the case of drug dealers, evidence is likely to be found where the dealers live." Id.; United States v. Valenzuela, 596 F.2d 824, 828-29 (9th Cir.), cert. denied, 441 U.S. 965 (1979).
 
 
 5
 Second, the information provided by CI-3 and CI-4 was sufficiently reliable. A magistrate may properly consider information provided by confidential informants. Angulo-Lopez, 791 F.2d at 1396-97. If an informant has proven reliable in the past, he may be presumed trustworthy on subsequent occasions. Id. at 1397. Here, the reliability of CI-3 is supported by the statements in the affidavit that he is "a tested, proven reliable informant who has provided reliable information which has resulted in the seizure of narcotics within the last ten days." See id. at 1398 (holding that veracity of informants supported by statements in affidavit that each had previously supplied police with accurate information about narcotics trafficking). CI-3 and CI-4 also tended to corroborate one another. See United States v. Yarbrough, 852 F.2d 1522, 1533 (9th Cir.) ("Interlocking tips from different confidential informants enhance the credibility of each.") (internal quotation omitted), cert. denied, 488 U.S. 866 (1988). Both informants, for example, reported that Sanders's ran a limousine service as a "front" for his drug operation. Finally, the police independently confirmed some of the information provided by the two informants.
 
 
 6
 Third, the information in the affidavit was not stale. The magistrate issued the search warrant on September 13, 1989. In July 1989, the confidential informants provided information that linked Sanders to several large-scale marijuana and cocaine transactions that took place in February and March 1989. On July 6, 1989, a federal agent informed the affiant that in the spring of 1989 he and Sanders had agreed that the agent would deliver a large load of marijuana to Sanders. Finally, CI-4 stated that Sanders was arranging to smuggle marijuana into the United States from Thailand in December 1989. "With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity." Angulo-Lopez. 791 F.2d at 1399. Based on the nature of the enterprise and the wealth of information detailing Sanders's drug activities, the magistrate could reasonably conclude that evidence of drug trafficking would still be present at Sanders's residence. See United States v. Greany, 929 F.2d 523, 525 (9th Cir.1991) (information of marijuana grow not stale even though it described activities that took place two years before warrant issued).
 
 
 7
 Sanders also contends that the district court erred in denying his request for an evidentiary hearing as required by Franks v. Delaware, 438 U.S. 154, 171-72 (1978). A defendant must satisfy a five-part test before a district court is required to hold a Franks hearing: he must (1) state specifically which portions of the warrant affidavit are allegedly false; (2) contend that the false statements or omissions were deliberately or recklessly made; (3) submit a detailed offer of proof, including affidavits, along with the allegations; (4) challenge only the veracity of the affiant; and (5) demonstrate that the challenged statements are necessary to find probable cause. Dicesare, 765 F.2d at 894. The district court concluded that Sanders had failed to demonstrate that the affiant, Agent Macanas, had acted either intentionally or recklessly. In addition, it held that the alleged misstatements and omissions would not affect materially the outcome of the case.
 
 
 8
 We review de novo the denial of a Franks hearing. Id. at 895. Only Sanders's claim that Agent Macanas excluded relevant background information on CI-3 and CI-4 could arguably suffice to show an intentional or reckless omission or misstatement. The other three statements listed by Sanders are not sufficient to merit a Franks hearing.
 
 
 9
 The district court properly denied Sanders's request for a Franks hearing. Sanders does not present any reasons to doubt the statement in the affidavit that "CI-3 is a tested, proven reliable informant who has provided reliable information which has resulted in the seizure of narcotics within the last ten days." In addition, Sanders has failed to demonstrate that Macanas acted either intentionally or recklessly in excluding the information. In addition, CI-4 did little more than corroborate information provided by CI-3. Even without the information provided by CI-4, therefore, we conclude that the other allegations in the affidavit supported a finding of probable cause. See id.
 
 
 10
 Sanders also contends that the government violated the district court's order to provide him with several documents that pertained to his request for a Franks hearing. It appears that the government provided all requested and relevant documents to the district court for its review.
 
 
 11
 Finally, Sanders contends that the district court erred in denying his motion to suppress because (1) the evidence was seized pursuant to an unlawful, warrantless search of sealed containers, and (2) the warrant was overbroad. However, Sanders failed to raise these grounds in support of his motion to suppress and we will not consider them for the first time on appeal. United States v. Restrepo-Rua, 815 F.2d 1327, 1329 (9th Cir.1987).
 
 II
 
 12
 Sanders next raises a series of challenges regarding the district court's handling of his defense that he did not possess the type of marijuana covered by the federal drug laws. Sanders first contends that the district court erred in precluding him from introducing certain statutory evidence in support of his claim. He argues that section 841(a)(1) only criminalizes possession of Cannabis sativa L. marijuana and not Cannabis indica, which he states was the type of marijuana recovered from his residence. See 21 U.S.C. §§ 841(a)(1), 812, schedule I (c)(10), 802(16). He also points to 21 U.S.C. § 209, which makes it unlawful to sell or deliver Cannabis indica. He contends that this evidence was relevant to his intent and state of mind and should have been admitted.
 
 
 13
 We review a district court's decision regarding the relevance of evidence for abuse of discretion. United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989). Sanders's argument is without merit. We have long held that Congress intended the definition of marijuana in 21 U.S.C. § 802(16) to outlaw all plants popularly known as marijuana to the extent that those plants possess the chemical THC. United States v. Kelly, 527 F.2d 961, 963-64 (9th Cir.1976). The Cannabis indica recovered from Sanders's residence contained THC and so is clearly covered by section 841(a)(1). Sanders's defense amounts to a claim that he misunderstood the applicable law. However, with few exceptions, ignorance of the law or a mistake of law is no defense to a criminal prosecution. United States v. Sherbondy, 865 F.2d 996, 1002 (9th Cir.1988). Accordingly, the district court did not abuse its discretion in barring the admission of the two statutes.
 
 
 14
 Cheek v. United States, 111 S.Ct. 604 (1991), relied on by Sanders, does not change this result. In Cheek, the Supreme Court held that a good-faith misunderstanding of the law is a defense under the federal criminal tax statutes. Id. at 609-12. The Court's decision rested on an interpretation of 26 U.S.C. §§ 7201 and 7203, which requires that a defendant must "willfully" attempt to avoid paying his taxes. Id. at 609. Cheek does not signal a broad retreat from the rule that ignorance of the law is no defense. As the Court itself stressed, criminal tax laws offenses merit "special treatment ... largely due to the complexity of the tax laws." Id. In addition, we recently held that Cheek does not apply where willfulness is not an element of the crime, as is the case with section 841(a)(1). United States v. Gay, 967 F.2d 322, 327 (9th Cir.), cert. denied, 113 S.Ct. 359 (1992). Cheek is thus inapplicable.
 
 
 15
 Sanders also argues that the district court erred in refusing to instruct the jury as to his mistake of law defense. Sanders's Proposed Instruction No. 2 stated that, in order to find Sanders guilty, the jury would have to find beyond a reasonable doubt that "the marijuana and hashish were of the species of marijuana known as Cannabis sativa L." Proposed Instruction No. 3 stated that the jury should return a verdict of not guilty if it concluded that Sanders "had a reasonable good-faith misunderstanding of the law as to which species of marijuana was illegal to possess."
 
 
 16
 We have not resolved the issue of whether a district court's denial of a proposed jury instruction is reviewed de novo or for an abuse of discretion. United States v. Streit, 962 F.2d 894, 897 (9th Cir.), cert. denied, 113 S.Ct. 431 (1992). We need not resolve the dispute here because the result would be the same under either standard. Proposed Instruction No. 2 misstates an element of the crime and the district court did not err by rejecting it. In addition, although a criminal defendant is entitled to a jury instruction on any theory "which provides a legal defense to the charge against him and which has some foundation in the evidence," Id. at 898 (internal quotation omitted), mistake or ignorance of law is not a valid legal defense. Therefore, the district court did not err in rejecting Proposed instruction No. 3.
 
 III
 
 17
 Sanders also challenges his sentence and fine. He contends that the district court erred when it applied a four-level increase in his base offense level for his role as a leader or organizer of five or more persons engaged in criminal activity, denied him a two-level reduction for acceptance of responsibility, and imposed a $50,000 fine.
 
 
 18
 Section 3B1.1(a) of the Guidelines provides for a four-level increase in the base offense level where "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Section 3B1.1(a) does not require a defendant to supervise personally each participant. United States v. Smith, 924 F.2d 889, 896 (9th Cir.1991). A participant is any person who is criminally responsible for the offense even if not convicted. Id. We review the district court's determination that Sanders was an organizer or leader of five or more people for clear error. United States v. Carvajal, 905 F.2d 1292, 1295 (9th Cir.1990).
 
 
 19
 When the police entered Sanders's residence, they found four of Sanders's co-defendants in the process of breaking down and repackaging a bale of marijuana into football-sized packages. All seven of the defendants arrested at Sanders's residence, including Sanders himself, were sweating heavily and were covered with marijuana debris. During the search of Sanders residence, police found over 700 pounds of marijuana, a sophisticated marijuana grow operation housed in a greenhouse in the backyard, a large volume of other drugs, and two firearms. They also recovered many portable telephones, pagers, a money counting machine, a device to detect hidden transmitters, and electronic scales, and drug ledgers. This evidence amply demonstrated that Sanders was running a large-scale drug trafficking organization out of his residence. The judgment of the district court therefore was not clearly erroneous.
 
 
 20
 Section 3E1.1 of the Guidelines provides for a two-level reduction in the base offense level where "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1. A defendant who puts the government to its burden of proof at trial will only rarely qualify for the reduction. U.S.S.G. § 3E1.1 application note 2. We review the district court's determination that Sanders did not clearly accept responsibility for his crime for clear error. United States v. Gonzalez, 897 F.2d 1018, 1019 (9th Cir.1990).
 
 
 21
 The district court stated: "Well, I don't think the record justifies the reduction of points for accepting responsibility in the case, all things considered, I'm sorry to say." The presentence report did not recommend a departure on this ground because "[t]he defendant has never admitted to his participation in this case." In addition, Sanders refused to make any statements, either verbally or in writing, to the probation officer who prepared the presentence report. Based on this evidence, we cannot conclude that the district court clearly erred.
 
 
 22
 Finally, the district court imposed a fine of $50,000, which was well within the applicable range. Sanders contends that the district court erred because he did not have any assets with which to pay the fine. We review de novo the legality of a criminal sentence. United States v. Rafferty, 911 F.2d 227, 229 (9th Cir.1990).
 
 
 23
 Under the Guidelines, a court must impose a fine unless the defendant establishes an inability to pay. U.S.S.G. § 5E1.2(a). "The guidelines establish that it is the defendant's burden to prove that he is unable to pay a fine." Id. at 232. Here, Sanders did not present any financial evidence to the district court whatsoever. He also refused to be interviewed regarding his finances. Sanders did not meet his burden of proof. See id. at 232-33 (upholding imposition of fine where defendant did not present any financial evidence). Based on the information before the district court and the nature of the offense, we agree with the district court that a $50,000 fine "is not unusual or unreasonable."
 
 
 24
 AFFIRMED.