62 F.3d 1426
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth JOHNSON, Defendant-Appellant.
 No. 94-10360.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 14, 1995.
Decided July 28, 1995.
 
 Before: HUG, ALARCON, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kenneth Edwin Johnson appeals from a judgment of conviction following a jury trial in which he was found guilty of conspiring to manufacture and distribute methamphetamine, possessing listed precursor chemicals, being a felon in possession of a firearm, and making false statements in the acquisition of a firearm. Johnson seeks reversal of his conviction on multiple grounds. We affirm the conviction because we conclude that Johnson's grounds for reversal are without merit.
 
 
 3
 * Johnson asserts that the Government ascertained the identity of his co-conspirator, Julie Deady, solely because she was present when Johnson was unlawfully arrested on January 27, 1993. Johnson contends that Ms. Deady's testimony should have been excluded as the "fruit of the poisonous tree." See United States v. Ramirez-Sandoval, 872 F.2d 1392, 1395 (9th Cir. 1989) ("live-witness testimony[] may be no less the 'fruit' of official illegality than is tangible, documentary evidence.") (citations omitted).
 
 
 4
 The district court concluded that Ms. Deady's testimony was admissible because her identity would inevitably have been discovered in the course of the Government's investigation of Johnson. Nix v. Williams, 467 U.S. 431 (1984) (illegally obtained evidence may be introduced if the Government can show by a preponderance of the evidence that tainted evidence would inevitably have been discovered through lawful means). This circuit has not squarely decided the question whether a district court's application of the inevitable discovery doctrine is reviewed de novo or for clear error. Ramirez-Sandoval, 872 F.2d at 1399 n.8. Because we conclude that the district court's conclusion can be upheld under either standard, we need not decide which standard of review is applicable.
 
 
 5
 The Government was conducting a substantial investigation of Johnson prior to his unlawful arrest on January 27, 1993. The record indicates that Ms. Deady was Johnson's girlfriend and was integrally involved with his drug related activities. Several informants knew of Ms. Deady's involvement in the conspiracy prior to January 27th. Moreover, a tip regarding Johnson's motorcycle led the Government to an informant who provided information about Ms. Deady. Accordingly, notwithstanding the fact that the Government had not targeted Ms. Deady as a co-conspirator as of January 27th, the record establishes by a preponderance of the evidence that her identity "ultimately or inevitably would have been discovered by lawful means[.]" Nix, 467 U.S. at 444.[1]
 
 II
 
 6
 Johnson contends that the district court erred in admitting testimony regarding ephedrine, a chemical used in the manufacture of methamphetamine, found in his apartment several days after Alcohol, Tobacco and Firearm (ATF) agents conducted an unlawful search on November 4, 1992. Johnson argues that the evidence should have been suppressed under the exclusionary rule even though the ephedrine was not seized during the November 4th search.
 
 
 7
 The Government contends that evidence regarding the ephedrine was admissible pursuant to the independent source exception to the exclusionary rule. Murray v. United States, 487 U.S. 533, 537 (1988) (independent source doctrine operates to admit evidence "initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality."). We agree.
 
 
 8
 ATF agents did not remove the ephedrine on November 4th because it was in a large trash can and was covered by liquid. Instead, when Johnson agreed to cooperate with the Government, the agents instructed Johnson to leave the ephedrine in his apartment so they could retrieve it the next day. Testimony at trial established that Johnson left his apartment with no intent to return after the November 4th search, leaving the ephedrine behind. On November 10th, the manager of the apartment building entered Johnson's vacant apartment, discovered the ephedrine, and notified the Drug Enforcement Agency. There is no indication in the record that the apartment manager was acting on behalf of the Government when she entered Johnson's vacated apartment. Thus, testimony regarding the ephedrine was admissible because it was obtained from a lawful independent source "unrelated to the illegal search." Ramirez-Sandoval, 872 F.2d at 1396.
 
 
 9
 Johnson's contention that the Government was in constructive possession of the ephedrine after the unlawful November 4th search is without merit. The Supreme Court has acknowledged that it may be difficult for the Government to establish that a later, lawful seizure is genuinely independent of an earlier tainted one, where the seized goods are kept in the police's possession. Murray, 487 U.S. at 542 (police discovered contraband after illegally entering warehouse and then kept warehouse under surveillance while they obtained a search warrant). In the present case, however, the mere fact that ATF agents instructed Johnson to leave the ephedrine in his apartment does not establish that the ephedrine was in police possession when the apartment manager discovered it six days after the illegal search.
 
 III
 
 10
 Johnson contends that the district court erred in admitting testimony regarding his theft of $33,000 from a co-conspirator, Raymond Paulsen, which occurred three months prior to the charged conspiracy. Johnson argues that the theft was not part of the conspiracy and was admitted simply to portray Johnson as an individual of bad character. United States v. Hill, 953 F.2d 452, 456 (9th Cir. 1991) ("Evidence of specific wrongful conduct is not admissible to prove the character of a person or to show he acted in conformity therewith.").
 
 
 11
 The district court allowed the testimony under Rule 404(b) of the Federal Rules of Evidence. Pursuant to Rule 404(b), prior act evidence may "... be admissible for [] purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). We review the district court's admission of evidence under Rule 404(b) for abuse of discretion. United States v. Luna, 21 F.3d 874, 878 (9th Cir. 1994).
 
 
 12
 We conclude that the district court did not abuse its discretion in allowing testimony regarding the $33,000 theft. This testimony was admissible as necessary background evidence to demonstrate the nature of the relationship between Johnson and Paulsen during the conspiracy. See United States v. O'Connor, 737 F.2d 814, 819 (9th Cir. 1984), cert. denied, 469 U.S. 1218 (1985) (evidence of aborted narcotics transaction in 1980 admissible under Rule 404(b) regarding conspiracy in 1981 because it explained how government informant's underlying debt formed basis of undercover sting); see also United States v. McKoy, 771 F.2d 1207, 1214 (9th Cir. 1985) (prior transactions between defendant and co-conspirator admissible under Rule 404(b) where transactions provided background and development of conspiracy and revealed nature of relationship between co-conspirators).
 
 
 13
 We reject Johnson's further contention that testimony regarding the theft should have been excluded under Rule 403 of the Federal Rules of Evidence. Evidence admissible under Rule 404(b) may be excluded under Rule 403 if the district court determines that its probative value is substantially outweighed by the danger of unfair prejudice. Arizona v. Elmer, 21 F.3d 331, 336 (9th Cir. 1994).
 
 
 14
 The district court did not abuse its discretion in concluding that the probative value of the evidence was not substantially outweighed by unfair prejudice. The evidence of the theft was probative because it provided background information necessary to explain the conspiracy. Johnson's argument that the evidence was highly prejudicial because it "served only to make the defendant appear deceitful, so as to raise the inference that he must therefore be guilty of the government's charges" is unpersuasive in light of Johnson's own testimony that he had previously been convicted of several felonies, including forgery, receipt of stolen property, perjury, and escape.
 
 IV
 
 15
 Johnson's final contention is that the district court erred in refusing to give the jury his requested instruction on the defense of entrapment. There is a split of authority in this circuit concerning the proper standard of review of a district court's determination that a jury instruction on the defense of entrapment is not warranted by the evidence. United States v. Manarite, 44 F.3d 1407, 1417 n.16 (reviewed de novo in some cases and for abuse of discretion in others), cert. denied, 63 U.S.L.W. 3756 (U.S. June 26, 1995) (No. 94-1641). Because we conclude that the district court's conclusion can be upheld under either standard, we need not decide which standard of review is applicable.
 
 
 16
 "To be entitled to an entrapment defense, the defendant must present evidence that [he] was '(1) induced to commit the crime by a government agent and (2) not otherwise predisposed to commit the crime."' Id. at 1417 (emphasis added) (quoting United States v. Kessee, 992 F.2d 1001, 1003 (9th Cir. 1993)). Johnson and his co-conspirator Paulsen testified that Rick Stoll, the person who offered to sell Johnson the chemicals required to make methamphetamine, was a government agent. However, Johnson's counsel did not call Stoll nor any other percipient witnesses to the stand to establish a foundation for the assertion that Stoll was a government agent.
 
 
 17
 Due to this lack of foundation, the evidence was insufficient as a matter of law to support a jury finding that Stoll was a government agent. Accordingly, the district court properly refused to instruct the jury on the defense of entrapment. See United States v. Sotelo-Murillo, 887 F.2d 176, 178 (9th Cir. 1989) (defendant entitled to instruction covering theory of defense only if there is basis in law and some foundation for it in evidence).
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 There is a lurking question whether Ms. Deady would have testified had she not been confronted with the evidence obtained during the Government's illegal searches. However, we decline to address this issue because this argument was raised neither in the district court, nor in the briefs on appeal. United States v. Restrepo-Rua, 815 F.2d 1327, 1329 (9th Cir. 1987) (failure to raise particular ground in support of motion to suppress evidence constitutes waiver)